Third case of the morning, call 209-952, Equal to State of Illinois v. Eric G. Daves, on behalf of Arthur Manning, my apologies. On behalf of Ms. Kim DeWitt, on behalf of Mr. Scott Jacobson. Counsel, are you ready to proceed? As you note, Justice Bowman is part of the panel. He was unable to be here this morning, but I know you two are familiar with our recording system and he will be able to listen to the argument as early as tomorrow. Thank you, Your Honor. May it please the Court, Counsel. I represent Arthur Manning, who was convicted of first-degree murder in Kane County. We raised two issues in our brief. The first issue has two components. First, whether or not the trial judge erred as a matter of law in failing to instruct the jury on self-defense when he agreed to instruct the jury on second-degree murder, unreasonable belief in self-defense. The second component of that issue is whether or not the jury instructions which were given inadequately advised the jury regarding second-degree murder and also minimized the state's burden of proof. Our second issue deals with whether the procedure under Papal v. Krenkel protected the defendant's constitutional right to the effective assistance of counsel. I just want to clarify, is your jury instruction argument tied to the self-defense issue? I mean, for instance, if we were to find that the trial court properly excluded the self-defense instruction, that therefore your argument would fail? No, Your Honor, because the state already agrees that there was a mistake made, an error, in deleting one of the essential elements that the jury had to find beyond reasonable doubt for first-degree murder before it could go on to deliberate on second-degree murder. And also, the jury was never given definitions of justifiable use of force in defense of person or reasonable belief. And in fact, during the arguments on the post-trial motion, the state's attorney, in responding to defense counsel's point that not only were the self-defense instructions as a package important to his actual defense of self-defense, but also they were integral to the jury's understanding of its burden of proof and the state's burden of proof as to the second-degree murder. And the prosecutor's response was, well, there is no definition of unreasonable. That's a question. Reasonableness is a question for the jury. Well, that's the whole point running through both of the components of this case. And the question is, whose role was it to determine reasonableness? Well, that's kind of the question. I just want to make sure I have your argument correct. That those two arguments stand alone. Yes. Okay. Now, the state, in its brief, relies on People v. Jeffries to argue that the trial court could correctly deny the jury the chance to deliberate on self-defense. And they cite the six-part test in Jeffries. However, a full reading of People v. Jeffries, I believe, shows that the Supreme Court did not contemplate that trial, by its decision, that trial judges would usurp the jury's role in determining reasonableness before, in the process of, in the decision of giving instructions. Rather, if Your Honors, and I say that for three reasons. First of all, in a footnote which immediately precedes that six-part test, the court in Jeffries referred to People v. Lockett. And they quote the language in Lockett that says, a self-defense instruction and a voluntary manslaughter instruction should be given when any evidence is presented showing the defendant's subjective belief that the use of force was necessary. Now, in Lockett, that's the test. It's a subjective belief. Then, right immediately after that quote, which is in Jeffries, the Lockett court says, the determination of whether the defendant's subjective belief is reasonable is for the jury to make. Now, I think it's a misreading of Jeffries to, I think the Supreme Court did not mean to put, when it said objectively reasonable, to, I think they were referring to whether or not the defendant can be found not guilty of self-defense, based on self-defense. Now, the second reason that I believe that this interpretation of Jeffries actually brings it into line with the cases relied on in my brief is, at pages 128 and 129 of Jeffries, after they set forth this test, the court discusses what the meaning is of a second-degree murder verdict. The court says, after the defendant has presented the best evidence for his defense, the trier of fact has concluded that the evidence only supports a finding of second-degree murder and not absolute justification for the defendant's actions. Again, it's the jury's role. The trier of fact has found that. The court also says that the statute expressly states that the state bears the burden of proving, beyond reasonable doubt, not only the elements of first-degree murder, but also that the defendant was not justified in using the force that he was used. When a defendant is found guilty of second-degree murder, the trier of fact has, in essence, concluded that the evidence that the defendant has offered was not sufficient to support his claim of self-defense. The third reason that I believe that this interpretation of Jeffries actually brings it into line with the cases relied on in my brief is, Jeffries does not, with all due respect, does not stand for the proposition that a trial judge makes a determination at the instructions phase of whether the defendant's subjective belief was objectively reasonable. That's inconsistent with Lockett, and it's also inconsistent with the other cases that I've cited in my brief. Now, the third reason why I think that the sixth factor does not mean what it at first glance seems to mean is, in a footnote in the state's brief, the state notes that in People v. Everett, the Supreme Court only had five factors. They combined the subjective and objective into one factor. And again, I think that's because the Supreme Court is clear that there's a division of roles here. All that's required from a defendant is that he have the subjective belief. It's up to the jury to determine whether or not that subjective belief is objective or not, objectively reasonable. Now, I'd also like to address if, in fact, given that the state has conceded that the first five factors of the test were met and that the defendant at least met the standard for jury instructions on unreasonable belief in self-defense, I believe it was reversible error as a matter of law to not give self-defense as well, given that the case law is clear that whether or not it's reasonable or not is up to the jury. Now, the state has argued that the standard of review is abuse of discretion. They cite case law in which the court states that if it's a mixed question of fact and law, it is abuse of discretion. First, it's our contention that there are no facts in dispute here. It's given the facts that were stated whether it was an error as a matter of law. But even if it is a mixed question, I don't believe abuse of discretion applies to the legal question. If it's a mixed question of fact, you defer to the trial court as to facts. But this court does not need to defer on questions of law. And therefore, de novo review is appropriate. The state also argues that the error here was harmless. And they cite People v. Thoreau and contend that this court may affirm if the state proves the jury's verdict would have been the same absent the error. But I believe that in Thoreau, it involved a failure to instruct the jury on a sentence enhancement factor under Apprendi. But here the stakes are much higher if the error deprived the defendant of a jury deliberating on a complete defense in addition to adequately being instructed on a significantly lesser mitigating offense. Now in Jeffries, the Supreme Court employed a different standard. There the court held that the failure to give instructions such as the burden of proof and elements of the offense constitute grave error. When viewing the record as a whole, it appears that the jury was not apprised of the state's burden of proof. Now that's very different. Here the jury was not apprised of the state's burden of proof. It wasn't apprised of the essential elements of the offense as far as second degree. And as a matter of law, the jury, the court deprived the jury of deliberating on a complete defense. Now that standard in Jeffries is also kind of reiterated in People v. Moore, which is a case cited in the state's brief. And there the court said that the court abuses its discretion only if the jury instructions are not clear enough to avoid misleading the jury. Well, here I think they did mislead the jury. They eliminated an essential element from the state's burden of proof. They didn't tell the jury what the definitions of essential terms were. And also the trial judge, as a matter of law, denied the defendant of a complete defense. Now, I believe that this standard on harmlessness is important because what happened here is the trial judge usurped the jury's role in deliberating on self-defense. Now, if this court forces a defendant on appeal to prove that the jury's verdict would have been different, then with all due respect, your honors are usurping the jury's role again, that the burden on him at trial was only to present slight evidence, some evidence to support, and then the jury is able to deliberate. Well, if the trial judge makes the mistake and doesn't give the instruction to the jury, then his constitutional right to have a jury deliberate on a complete defense is illusory because he can never meet the higher burden of proving that the result would have been different. However, the burden, the standard under Jeffries that he wasn't apprised, the jury wasn't apprised of the state's burden of proof is the appropriate standard. Now, so your position is the trial court can decide whether there was any evidence. Right. Which he did. Right. Set that aside. Back to this case. You're not arguing that the trial court should submit that instruction regardless. You're okay with the idea that the trial judge still decides whether any evidence was presented. Yes. But once the court determines there is slight evidence, there is some evidence, then all else must go to the jury. That's where you draw the line. Right. And that's consistent with Lockett and Harris and Woodward and Stewart. I'm sure that's your position. Yes. And in my opinion, with Jeffries as well. Now, as to our second issue regarding the critical proceedings, the counsel appointed for the defendant on his critical motion moved to withdraw without giving any indication that as to what the issues were or why they had no merit. Now, this was a constitutional right to effective assistance of counsel. On appeal, if I filed an Anders that said I looked at this record and there's nothing there, your honors would throw it back. But the record shows that this counsel stated on the record before the judge in the presence of the defendant that I've spoken to the defendant, we've gone over this, and he's withdrawing this motion. My client is not a lawyer. His lawyer told him these issues had no merit. That's why he had a lawyer appointed to assist him. It's not this court. This court should not fault the defendant for not understanding, not knowing whether or not his client, his counsel is correct or not. And, in fact, that's why the Anders procedure. Well, let's stick to Crankle. Are you not adding a layer to Crankle? In Crankle, the trial judge is supposed to talk to the defendant, talk to the attorney, see if there's any basis to appoint another attorney. Now, here the judge said, you know what? I'm reading your allegations. I'm appointing another attorney to look into this matter. Right.  No, your honors. So you're saying there's another. Then once that second attorney comes in, then it's again incumbent upon the court to ask that attorney, well, what happened? What were the allegations? If the trial judge had inquired of the defendant, which is under Crankle, the trial judge is supposed to make a preliminary inquiry and say, what are the basis of your allegations? And if he doesn't find the allegations sufficient, according to how the defendant voices them, then he doesn't need to appoint counsel to assist him. Now, but there would be a record. Here, there was no record because the trial judge immediately appointed counsel. Then counsel comes on, and there's no record. He doesn't make a record either. What does the record show the defendant's pro se motion was alleging ineffective assistance? That counsel didn't call certain witnesses. That certain witnesses appeared seven days before trial, and they weren't called. That his attorney didn't speak to or call a couple of the other men that were present that night. And there were a couple other allegations that it was, it was, it's not sufficiently articulated for this, based on this record, to know whether or not those issues were meritorious or not because it's not flushed out. But that's counsel's job. But how do you know it wasn't flushed out as opposed to it just simply wasn't put on the record? Correct. Well, and it's, it's that because of the way crankle is set up so that it and by analogy to people versus Greer, which is in applies to post conviction counsel, you know, at the trial level, a post conviction attorney, which is only who's only required to give statutory right, a statutory. Reasonable level of assistance. Okay, it's much lower than the constitutional right to effective assistance at the trial level. A post conviction attorney has to comply with an Anders type procedure before he can move to withdraw. He has to tell the court, these are the issues and why they're not. So are you asking us then to impose that obligation in the context of a crankle? Yes, I'm saying that if that applies to post conviction counsel at the trial level, it applies to post conviction counsel at the appellate level. And if the Anders procedure applies to appointed counsel on a constitutional right to effective assistance on appeal, then it's a minimal burden to protect the defendant's right to the effective assistance counsel to impose that on a trial level crankle attorney. Because otherwise there is no way to know whether the trial judge has made the right decision in allowing counsel to withdraw and disposing of the motion. There's no way for this court to know. Wait a minute, but he didn't. The trial court here at split Harris didn't rule on the motion. The trial court simply allowed the defendant to withdraw his motion. Well, he allowed counsel to withdraw and reappointed trial counsel. But before that happened, the defendant withdrew his motion. Right. Therefore, counsel is present without a task. So counsel's allowed to withdraw. Right, right. Would your argument be the same if the trial court had made the initial inquiry and not just skipped over that point and said failure to call witnesses? Okay, I'm going to appoint counsel for you. If I mean, are you saying that the record has to be fleshed out in both areas or only in one or the other? Well, crankle doesn't require that. If the trial judge goes to the court. That's a whole different story. Right. What are you asking for here? If the trial judge had engaged in the crankle-type inquiry. With the defendant. Right, right. That would be more than we have now. Right, but are you saying that would be sufficient or is it? Yes. In other words, are you saying that counsel had to do that when the defendant withdrew his motion or that the court should have done that when the defendant wished to withdraw his motion because it was not done earlier or regardless of whether it was done earlier, the trial court should do that, and therefore you're asking us to impose like a third layer, as Justice Burke said, you're asking for a new and additional layer on a crankle proceeding. I don't believe that I'm asking for an additional layer. I'm saying that either the trial judge or the trial attorney has to be, there has to be some basis in the record for review as to the decision about these issues and their merits. And you base that on what? On crankle. Okay, I'm sorry. And also on the rights afforded to defendants under Anders and Pennsylvania v. Finley and People v. Greer. I think by analogy, it's the same. It's a constitutional right to effective assistance of counsel, and before counsel can move to withdraw as constitutionally appointed counsel, there has to be, he can't just, in my opinion, given those decisions. What is counsel's obligation once appointed? Let's assume here for the sake of argument that the court had made an inquiry, asked some questions, et cetera, and concluded I will appoint counsel for you, which is what the trial judge did here. Where is it articulated in crankle that the attorney must then, let me strike that. My understanding is that the trial, when the trial court appoints counsel, counsel's obligation is to investigate the claims of the defendant. And then if and only if there is a basis to then go forward. And you're asking then, it's not required in crankle for counsel to say, and this is why I'm not proceeding. This is what I've investigated, and I find that there is no basis to proceed. Is that correct? That was kind of a long question. I apologize. No, no, no. Is that what you're saying? I think that I'm pressing this, what your honors are terming as an additional layer, that it is perhaps a more onerous burden on the counsel to make a record because the trial judge didn't make a record. But I don't think that compared to, you know, that under Greer, if an attorney can't move to withdraw on PC in the trial court, unless he files an Anders type motion explaining the basis for his motion to withdraw. Because here, then it should apply when it's a constitutional right to counsel. Because otherwise, here, the very counsel that was alleged to be ineffective steps back in. And there's no basis in the record to determine if counsel was ineffective or not. And I think that defeats the whole purpose of crankle if you have the kind of minimal, minimal action here, but why the trial judge admittedly, he appointed counsel, which on the surface appears that he's granting, you know, he's going beyond by skipping over the first stage, going to the second. He's protecting the defendant's rights. But then to allow counsel to say, I looked at it and there isn't anything here, you know, without. But isn't, isn't that what counsel is appointed to do is to investigate whether or not there are claims, justifiable claims made by the defendant. But he should at least have to, as to the issues that you should have to based on, based on the analogies. Yes. And also by the spirit of crankle as to what, what, what this procedure is set up to do. Okay. Thank you. Thanks. You'll have a chance to reply. Counsel. Morning, Congress. Morning, Counsel. May it please the court. I'd like to just start with the crankle issue since we all seem to be in crankle mode at the moment. I'm going to get you off that issue. Okay. Fair enough. Well, then I'm not going to. Okay. To the jury instructions. Yeah. Let me ask you a question. We have, we have Harris, which was cited approvingly by this court in Woodward that makes this statement. It is difficult to conceive of a situation where there would be evidence of a belief that deadly force was justified, but where the evidence would be such that the issue of reasonableness of that belief should not be submitted to the jury. Is this that difficult to conceive of situation? No, I don't believe that it is. I think that the law has changed since Harris was decided. Harris was decided in 1976. The legislature changed the Second Degree Murder Statute in 1993, and that's what occasioned our Supreme Court's interpretation of the Second Degree Murder Statute and self-defense in Jeffries. Now, there the Supreme Court picked up the six-factor analysis that was, that the trial court relied on from Chavez. So there's an identical analysis there between Chavez and Jeffries. And I understand what Defense Counsel is talking about. I mean, to the extent that Jeffries may or may not represent all the finer points as to self-defense law, we can argue about the nuances of that, sure. But the bottom line is the Supreme Court said what it said in Jeffries, and it said it for a reason. It's because the legislature changed the Second Degree Murder Statute. It's because prior to that, when it was a voluntary, and when it was a voluntary manslaughter, the state had to go ahead and prove the absence of any mitigation prior to the defendant putting on any evidence whatsoever. And when the legislature changed that, it became the defendant's opportunity to present mitigation evidence, which the state had to rebut by a preponderance of the evidence. So to conflate the situation that occurred prior to 1993 where you have conflicting burdens of proof to the situation that occurs after 1993 is, I think, mistaken. And that's one of the reasons, I think, that the Lockett Rule no longer applies in the state of Illinois. Once the legislature changed the murder statute, changed the Second Degree Murder Statute, the Lockett Rule that every time you instruct a jury on voluntary manslaughter, you also must instruct a jury on self-defense, I think no longer applies. The standard has changed, and the standard is simply this. Whether or not there is evidence, any evidence at the moment of giving jury instructions to instruct a jury on the defendant's theory of the case. It can be of doubtful credibility. It can be of very slight credibility. But the point is the evidence has to be there. And whether or not there's evidence of subjective reasonableness is different from whether or not there's evidence of objective reasonableness. Now counsel cited to my footnote regarding the People v. Everett, Everett is a decision prior to the change in the Second Degree Murder Statute. So, I mean, by the analysis that I'm giving you today, with the way the statute reads, Everett would no longer apply. And I don't think it should hold sway over this Court's decision either. What I'm saying is simply this. Here the trial court made a decision not to instruct the jury on self-defense. It then later changed its mind, based on the defendant's statement about his own infirmities, to instruct the jury on second-degree murder. Now the defendant follows that up on appeal and says, anytime you instruct the jury on second-degree murder, you necessarily have to give an instruction on self-defense. And the failure to do so is an abuse of discretion. And what I'm saying is simply this. That assumes that the jury was entitled, that the defendant, I'm sorry, that assumes that the defendant was entitled to get that second-degree murder instruction in the first place. I mean, the jury was only misled if there was someplace else for them to go. And here, in this particular case, if you look at the defendant's testimony, given all of the conflicting statements that he gives, but if you look at the defendant's testimony, there simply is insufficient evidence to give a second-degree instruction. Now here the judge ultimately did. And while I would be willing to concede that that aspect of the case is an abuse of discretion, I don't think that the defendant was necessarily, A, entitled to a second-degree murder instruction, or B, that it follows from that that he gets a self-defense instruction. Well, I mean, and you're basically saying the analysis in McGee, which is that they shouldn't have even gotten the instruction in the first place, so no harm, no foul. Yes. What if there is evidence in the record? What if we find that there was slight evidence based upon the fact that the defendant in this case is blind in one eye, paralyzed in one arm, 57 years old, slight drove, all these things, and there's evidence in the record that he was hit first by the victim. Well, he says that, but yes. You know, slight evidence is in the record. So there's evidence in the record that he was hit first and that after he was hit, he was thereafter picked up by the victim and was, you know, feared for his life. And maybe that has the ring of truth to it. Maybe that explains why the victim has the knife wound in his back when he has the other two wounds in the front. You know, I can't account for what happened because I wasn't there. None of us were. But what I can tell you is this, is that a jury unanimously found this defendant guilty of first-degree murder. They found death, causation, and intent. And where they got the intent from was not just from the state's witnesses. I mean, the state's witnesses. We can't speculate about a jury's finding because, I mean, that exact argument was made in Harris, and it was discounted. The harmless error argument was made in Harris, so it was discounted. But here what we have is a little bit different than the situation in Harris. In Harris, you have the defendant testifying that, you know, his state of mind is such that he knows the victim carries a gun and he believes that the victim's going to shoot him. And I believe that's the case also where the victim says something about that he's going to kill his father. There you've got a prior, you've got, you know, at least a reputation established with the victim. You know that the victim's possibly a dangerous person. Here, there was no reason to believe that the victim was anything other than what he was, a guy who was drunk that wouldn't leave the property that the defendant and his buddies lived in. And so I don't think that there's a credible, I mean, in this situation, there's no credible mortal threat like there was in Harris or Woodward. In Woodward, there's the same situation. It was a guy who was known by the children in the neighborhood to carry a gun. But this issue of a credible threat, I mean, again, we, you know, are we to make that determination? Well, I, that's, I mean, that. What does that jury determination? That becomes the issue. I don't think that when the Supreme Court said in the line of cases, you know, going way back to the 50s, and in its most recent statement in Devin Chenzo, I don't think that the Supreme Court meant that the trial judge is asserting the jury's role simply by evaluating what evidence has been presented. I mean, at the jury instruction stage, all the trial court is supposed to do is, you know, hear requests from the parties as to what instructions they would like and determine whether or not there's evidence to support it. And that necessarily does require some, you know, recall of the events that occurred at trial. And, you know, at that moment, the trial judge does not have a transcript like we do on appeal. But it involves at least some human calculation as to what occurred. But it seems like this judge did that. And if you read, I mean, I'm sure you've read it many times. His finding of, you know, why he was going to give the second degree instruction, it seems to be diametrically opposed to why he wouldn't, why he didn't give the self defense. And now, again, I understand your argument under McGee that if he wasn't entitled to it all, that takes us one direction. But let's stay on this path here. Let's say he was entitled to it. You know, again, you look at that finding and you say, well, how do you give one and not the other? Well, I would submit to you that that's the product of the defendant's own testimony. I mean, here the defendant never testifies prior to talking about, you know, he talks about his infirmities. He lays out all the, you know, problems that he has. But he never, I mean, he never gives any testimony about his mental state other than the victim said something to me. That struck a nerve. Actually, I'm sorry. That's what he says in the police interview. His testimony on the stand is that that, you know, set me off into a blind rage and I went berserk. And that's what he says. And that's the only evidence of his mental state. So what I would submit to you is that he probably didn't even in his own mind. And we can infer that from his own statements. He didn't even believe in his own mind that his use of force was reasonable or necessary. Isn't the question whether or not there is any evidence to support an instruction being given and not the role of the trial court to weigh all of the evidence and conclude whether one persuasion or the other outweighs? Absolutely. But there's a difference between a defendant, you know, or there's a difference between somebody saying, you know, I have all of these things wrong with me. And this was at the forefront of my mind at the moment in which I did whatever occurred. You know, here it wasn't that the defendant testified. All of my infirmities were at the forefront of my mind. And at the moment when the victim picked me up, you know, my kidney came back. Or I was worried about, you know, my blindness in my eye. Or I was worried that the three other people who were there who were beating up on the victim wouldn't be able to protect me. It was, I was angry. So this goes to your argument of subjective belief, whether he had it or not. And again, if he didn't have it, then he shouldn't have been given the second degree instruction. That's your position. Absolutely. But again, I get back to if he should have been given this instruction. If the trial court was correct in saying that there's some evidence that he had a subjective belief. I mean, I'm looking at Harris, Woodward, Foster, Timberson, Russell. I'm looking at all these cases that say this case should be reversed. Now, show me a case under this fact scenario where it was affirmed. Okay. I can't show you a case under this particular fact scenario because, frankly, one doesn't exist. I mean, there are no situations in the state of Illinois where a victim has multiple stab or gunshot wounds. And the defendant was able to assert a meaningful claim of self-defense. And the court found an abuse of discretion for not instructing the jury on self-defense based on the defendant's testimony. I mean, it's kind of like a Crespo situation. Post-1993, what I'm saying is this. Post-1993 with the changes to the statute, the issue of whether or not the defendant had a subjective belief and an objective belief based on the circumstances has been separated. So the defendant, through his testimony, has to establish, whether it's testimony, whether it's physical evidence, whether it's through the state's witnesses, it could be any of those means. But he has to establish a subjective belief in the use of force and an objective belief in the use of force. I'm sorry, in the reasonable belief of the use of force. What I'm saying is that that simply isn't present in this case. And to follow up on that, I think it's a little bit difficult to say that just because here the trial court gave the defendant a second-degree murder instruction, an instruction I submit that he was not entitled to, that he should get all of these other instructions that follow from it, or that he necessarily was entitled to a second-degree murder instruction that had every possible aspect of self-defense articulated in it. That, to me, simply is incorrect. The meaningful question here is whether or not the defendant has a legitimate claim of entitlement to a second-degree murder instruction in the first place. And, yes, Justice Jorgensen, I absolutely agree with you. It does require the trial court to make an evaluation of the evidence that it has heard from the defendant at that time, but merely to determine whether or not it has heard the evidence sufficient to support the claim or not. And that's it. And it should go no further. But what I'm saying is this. A close reading of the record in this case, specifically the defendant's testimony, shows I don't – I would submit to you – shows I don't believe he was entitled to a second-degree murder instruction, because never once does it show that he even believed his use of force was reasonable. He never accounts for the fatal wound. So your answer to this – the dilemma here is that the trial court was simply wrong and never should have given the second degree. Yes. Therefore, no harm, no foul. But what we're asking you to do is assume that the trial court was correct in giving the second degree. How does that, if at all, change your position with respect to the first degree? I'm sorry? The self-defense. Self-defense. Well, in that situation – I mean, in order to assume that the defendant's entitled to second degree, the presumption that comes along with that is that the defendant was – that he subjectively believed he was entitled to use the force he used at the time he used it. It turns on whether or not he had – it turns on the imperfect self-defense point. It turns on whether or not he was objectively reasonable in the use of force that he used. And what I would submit to you is, if you look at the circumstances of the case, just as the defendant testified to, what the defendant testified to was that all of a sudden he and his buddies come downstairs, they confront the victim. The victim, out of nowhere, throws a punch at him, contradicting the state's witness' testimony, regardless. Then the victim goes and charges at him, I think picks him up like a football player or something like that. And I think the defendant says something about the possibility of being power-slammed on the pavement, which he averts by pulling out his knife. And what he says is this. He says, I – the knife just came open. It just came open and I ran into him. I ran into him doesn't mean, you know, he picked me up and we were in the air and then I just, you know, popped him in the back with the knife. It means we were a measurable distance away and I took off and I ran into him. And apparently during that process, the knife, which he had in his pocket, magically opened up. And the one thing that I find telling about all this is that the defendant never accounts for the other two stab wounds, particularly the superficial one in the shoulder and the fatal one to the victim's heart. The one that enters the victim's body with such force that it breaks the victim's fifth rib, enters his heart, and the victim's dead 20 seconds later. To use that kind of force, to use that level of force, you would think that one asserting a claim that their use of force was reasonable would be able to recall that. But here the victim – I'm sorry, here the defendant never says, you know what, I stabbed him in the chest. I stabbed him in the chest because he was attacking me. He never says that. If I'm the defense attorney, I'm arguing it before the jury that after he got punched in the face and then this guy started charging at him like a football player, that's when they ran together and the knife wound happened. I mean, that's what I'm going to argue if I'm the defense attorney. Sure, absolutely. But even your own clients are not going to back you up. But again, it sounds to me like you're arguing to us like we're the jury. And maybe, you know, which – is this a question of fact or a question of law?  I would submit that it is a question of law. I mean, to the extent that he got a second-degree instruction that he wasn't entitled to, I don't believe that you get all of the instructions that follow from it. And in that sense, I submit that once the legislature changed the presumptions in the second-degree murder statute, Lockett became deadlier. It became incumbent upon the defendant to prove some slight credible evidence, but to prove all six elements of self-defense. And the court in Jeffries, by the way, is unequivocal about this. I know the defense counsel and I were kind of going back and forth about this, so let me just be clear. The court in Jeffries says the absence of any one factor precludes a defense of self-defense. I mean, that's the law. If it's not objectively reasonable from the defendant's own testimony, then there's no way that the defendant could have gotten a self-defense instruction, regardless of whether or not the trial court judge gave the jury a second-degree instruction. I think that's a separate inquiry. If the court meant to keep them combined like it did in Everett, the court wouldn't have done so. And I would submit that if the legislature intended a different outcome or a different result, the legislature wouldn't have amended the voluntary manslaughter statute. I would submit that the change in law necessitates a change in view regarding second-degree murder. In this case, I do not believe that the trial court judge made the correct decision in instructing the jury on second-degree murder. Regardless of that decision, though, I don't believe that the defendant is entitled to a complete self-defense instruction or any of the instructions that follow therefrom. Consequently, at least in regards to the Crankle issue, I don't believe that we should be drafting appellate court requirements onto a Crankle hearing. I think Crankle is very narrow and limited in scope, as this court well realizes. Are there any other questions? Thank you. Your Honors, this is the first time that the State has argued that the trial judge, that the defendant, wasn't entitled to second-degree instructions. As I stated in our reply brief, I quoted the State in its brief that said, in this case, there was evidence to show that the defendant had an actual but unreasonable belief in his right to use self-defense warranting a second-degree murder instruction. That's at page five. Number two, Lockett is still good rule. Jeffries relies on Lockett. In Billups, which is cited in our reply brief, which is a 2010 case, the Court repeated, extensively discusses Lockett. The only reason it didn't apply Lockett in Billups is because there were diametrically opposed versions of events. Under that situation, reasonableness was not a question for the jury. It was either you believe the defendant, and I acted in self-defense, or you believe the State's witness, and it was murder. Here, this prosecutor argued to the jury it was reasonableness. It said at post-trial motion, the question of reasonableness was for the jury. That was the issue. Under those circumstances, that was the jury's role. The trial judge usurped the jury's role in taking that away. The fact that it's first-degree, second-degree now and it was voluntary manslaughter before doesn't make a difference because as shown by Jeffries and by Billups, Lockett is still the rule. Billups presented a very exclusive distinction that doesn't apply here. Now, as far as whether or not there was evidence contrary to self-defense, we're not arguing reasonable doubt here. We're arguing jury instructions. That's a big distinction. We're questioning whether, as a matter of law, the issue of whether the defendant acted in self-defense was removed from the jury. The burden on the defendant was just slight evidence. Even if the evidence supporting the instruction is inconsistent with the defendant's testimony, he's entitled to the instruction. Here, the trial judge did state that a person of the defense makeup, small, elderly, disabled, blind in one eye, paralyzed in one arm, given these circumstances, he would have a subjective belief. That's it. That's the question. Why does the Supreme Court throw the word credible in there? I mean, they say slight evidence, but they throw the word credible in there. So who's supposed to make that determination? Well, IPI says credibility is for the jury. I know that, but I'm just saying, why does the Supreme Court use that word? If there's slight credible evidence, then the person gets the instruction. Maybe it's, well, this was admissible evidence. Whether it's credible or not, to me, is up to the jury. Thank you, Your Honors. Thank you. We will be in recess.